**W. A. SAWYER, D/B/A Northwest Broadcasting School**

v.

**UNITED STATES.**

No. 71–53.

United States Court of Claims.
May 7, 1958.

---

Howard A. Rankin, Portland, Or., for plaintiff. Paul A. Sayre, Portland, Or., on the brief.

M. Morton Weinstein, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

WHITAKER, Judge.

Plaintiff sues for unpaid tuition in the amount of $18,969.11, claimed to be due him under a contract dated October 19, 1951, for the training of veterans in radio broadcasting and as radio technicians, under the provisions of P.L. 16 and P.L. 346, 78th Congress,[1] commonly referred to as the G. I. Bill. This contract terminated in October 1952, but the school continued to give the students instruction until they completed their courses in March 1953. Defendant does not deny that the amount claimed was due under the contract as written, nor does it contest the amount claimed from October 1952 to March 1953, but says that the cost data furnished by plaintiff, on which the rate of tuition was based, was erroneous. It seeks a reduction in

1. 57 Stat. 43, Veterans' Regulation No. 1 (a), pt. 7, 38 U.S.C.A. following section 745; 58 Stat. 287, 38 U.S.C.A. § 693 et seq.

the tuition rate on this contract and counterclaims for amounts it alleges were overpaid on prior contracts.

Its defense to the suit on this contract and also the counterclaims are based upon the allegations: *First,* that the plaintiff[2] submitted erroneous cost data in negotiating the tuition rates provided in prior contracts, which were carried forward in the one sued on, in that he did not allocate certain school operating costs to his advertising business, partially conducted by him from the school premises; *Second,* that in negotiating the tuition rate for the radio technical course plaintiff claimed an allowance for salary for instruction by plaintiff personally, although he did not in fact teach the course; and *Third,* that students enrolled in separate courses were improperly mingled or mixed together in the same classroom under a common instructor, and that a lesser quantum of instruction was thereby given than what was billed and paid for. The alleged overcharges resulting from the first and second counterclaims total $50,868.74, and from the third counterclaim, $45,876.95. Defendant would offset these amounts against what it says is the proper amount due on the present contract.

Plaintiff is entitled to recover on the contract, unless he fraudulently misrepresented the facts on which the contract was based.

Plaintiff has been engaged in the training of veteran students in radio broadcasting since September 1946 in Portland, Oregon. Under a series of contracts with the Veterans Administration, veterans have been trained at hourly rates and payment has been received therefor upon submission of vouchers as provided in the contracts. Before actual cost experience had been established, the contract rate of tuition was based, in part, upon costs as estimated by plaintiff. Thereafter, rates were negotiated, based in large part upon actual cost experience as certified by plaintiff. Officers of the Veterans Administration reviewed the cost data, made adjustments where necessary to conform to regulations or as a result of audits or conferences with plaintiff, and then arrived at what was considered a "fair and reasonable" rate of compensation, as required by law. In 1949 the rates of tuition for courses which had been under contract for at least two previous years became fixed as the "customary cost of tuition" pursuant to P.L. 266, Act Aug. 24, 1949, 63 Stat. 631, 652–653. It was thereafter unnecessary for plaintiff to submit cost data, except in connection with certain technical courses, which were first instituted in 1949.

Some time after May 1952 defendant refused to honor any vouchers submitted by plaintiff on the ground that overpayments had been made. It is for payments accruing under the contract for the period after payments were stopped until courses were completed that plaintiff brings this action.

Defendant says that the cost data furnished by plaintiff for fixing tuition rates on prior contracts, which prior contracts determined the tuition rate in the contract sued on, was false in the respects set out above, to wit: first, that there was included therein costs properly allocable to plaintiff's advertising business; second, that plaintiff claimed the salary of an instructor for himself in the technical course, although he did not teach any subject in this course; and, third, that less instruction was given in the mixed classes than that for which plaintiff billed the Veterans Administration.

We consider defendant's first contention that a part of plaintiff's claimed costs was attributable to his advertising business carried on from the school premises. During the time for which cost figures were furnished to the defendant, plaintiff conducted a daily radio program over a local commercial radio

---

2. Plaintiff sues individually, although the business was actually owned and operated as a partnership.

station. This was a separate and distinct activity from the school. Related thereto, plaintiff engaged in advertising promotions, which he conducted both from the school and from his home. Defendant seeks to allocate plaintiff's total costs to the advertising business and to the school in direct proportion to the amounts received by plaintiff from each.

Defendant shows no justification for this. The costs allocated in part to the school, and in part to the advertising business consisted of "supplies, depreciation, rent, heat, light, advertising and administration." On the first contract it allocates 54.33 percent of the costs to the school and 45.67 percent to advertising; on the next contract, 46.38 percent to the school, and 54.62 percent to advertising; on the next, 68.88 percent to the school, and 31.12 percent to advertising; and on the last 68.97 percent to the school, and 31.03 percent to advertising. On the technical training course it allocates 68.97 percent to it, and 31.03 percent to advertising.

Plaintiff's advertising business was carried on partly from the school office, and partly from plaintiff's home. Other than the office, plaintiff used no part of the school premises for his advertising business. In addition to the office, there were in the school premises six classrooms covering 3,250 square feet, and there was a laboratory or workroom with 20 work stations. To charge from 31 to 54 percent of the rent, heat, and light, and depreciation to advertising is manifestly absurd. What amount of the supplies was used in the advertising business is not shown, nor what part of the administration expenses and advertising.

So far as the proof shows, all the expense data furnished by plaintiff were properly attributable to the operation of the school.

Defendant's second contention is the inclusion within the cost of operating the school of an allowance for an instructor's salary for Sawyer personally, when he did not teach the stated course, and was not qualified to do so.

It is true that plaintiff did not teach this course. He did, however, teach some of the broadcasting courses and he supervised all instruction. The trial commissioner finds that "it was common practice to allocate costs between courses where unbalanced costs might otherwise result. The allocation of allowable costs and the salary allowance for Sawyer were determined and agreed upon between plaintiff's accountant Oswald and the Veterans Administration contracting officer Prink, for the determination of a fair and reasonable rate of tuition for the technical training course."[3]

If the Veterans Administration's contracting officer was aware of the allocation of a part of the time Sawyer put in as an instructor in the broadcasting courses—if he was aware that a part of it was being allocated to the technical course, there has been no misrepresentation.

The contract rate is not determined alone by costs, as is shown by the rate fixed for the third contract entered into. Plaintiff submitted cost data for the broadcasting course of $1.24 an hour, but the contract rate was fixed at 97 cents. The law required that "fair and reasonable" compensation be fixed. The rate of 65 cents for the technical course is in line with the rate fixed for this course in other schools.

We do not think defendant has shown any misrepresentation. It concedes there has been none. If there was none, the contract must stand as written.

Thirdly, defendant says that students in different courses were intermingled under one instructor, and, hence, did not receive the instruction for which the school was paid. The trial commissioner finds that "the grouping of students in mixed classes applied only to those receiving instruction in related subjects. For example, the radio technician course might combine radio technician students and advanced radio technician students.

3. Finding 21.

Broadcasting units and technician students could not be combined. * * *" He further finds that there were "students enrolled in the basic technical course who were in attendance in the advanced technical course. This condition was brought about by reason of the fact that some students had more experience upon enrollment in the basic training, and therefore advanced more rapidly and were transferred into the advanced technical classes, although they continued to be carried on the rolls in the basic course, and were billed accordingly, the rate of tuition being the same for both courses. The combination course would justify the advancement of students as rapidly as they could complete the necessary basic training. There is no evidence that veterans were billed at a rate higher than the training provided." [4]

Defendant excepts to this finding, but we see no reason to alter it.

Defendant relies upon its Exhibit 16 to show that students received, at the same time, instruction as radio technicians and as radio broadcasters. We do not think this Exhibit 16 shows this. It does show that one or more students received instruction for a number of hours as radio technicians, and for a certain number of hours as radio broadcasters, but it does not show that they received instruction in these two subjects at the same time and in the same classroom. This exhibit lists classes 20 to 25, and class 27, but we do not understand from the exhibit that "classes" means the students in a particular classroom, but, rather, means the students of a particular group in the school. This shows that group 20, designated class 20, received a certain number of hours in the radio technician course, and a certain number of hours in the radio broadcasting course. This was permissible when the school instituted the combination announcer-technician course. This combination course embraced 7 separate courses in radio broadcasting and as radio technicians. Exhibit 16, therefore, shows that some of the students in group 20 received instructions both as radio broadcasters and as radio technicians. It does not show, however, that the school billed the Veterans Administration for hours of instruction which the students did not receive.

The defendant in its reply brief concedes that the State has the sole power to approve the teaching methods of the school.

On May 26, 1952, the State Director of the Division of Vocational Education and Training for the State of Oregon, had reported that the plaintiff school was found satisfactory in all respects, and he reaffirmed the prior approval of the school for veterans' training. Later, the Veterans' Administration wrote the State Director of Vocational Education on October 17, 1952, calling his attention to complaints that had been received about the instruction being given by the school. The State Director of Vocational Education replied on February 18, 1953, stating that the complaints were unjustified. His letter concludes:

"It appears that no student was far enough behind the class [attended by him] that he did not get full instruction. It does seem that the majority of students graduating from this school are able to secure jobs in radio, as is indicated by the attached list. * * *"

The Veterans' Administration requested the Federal Bureau of Investigation to make an investigation of the school. They did so, and their report showed that they were able to find no evidence of fraud.

If the school had actually charged the Government for hours of instruction in a radio broadcasting course because of a student's attendance in a radio technician course, this of course would have been fraudulent.

In view of all this, it seems to us that the defendant has failed to sustain its

4. Finding 23.

contention with regard to the mixed classes.

Plaintiff is entitled to recover. Defendant's counterclaims are without merit and will be dismissed. Judgment will be entered in favor of plaintiff in the amount of $18,969.11.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.